Elizabeth Hopkins – CA State Bar No. 324431
  Email: ehopkins@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone:  (818) 886-2525
Facsimile:   (818) 350-6272

Teresa S. Renaker – CA State Bar No. 187800
teresa@renakerhasselman.com
Margo Hasselman Greenough – CA State Bar No. 228529
margo@renakerhasselman.com
Kirsten G. Scott – CA State Bar No. 253464
kirsten@renakerhasselman.com
RENAKER HASSELMAN SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Telephone: (415) 653-1733
Facsimile: (415) 727-5079

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GREG ENDRIES and DEE NICHOLS on their own behalves and on behalf of a class of similarly situated participants and beneficiaries,<br><br>                    Plaintiffs,<br>        v.<br><br>BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN; BENEFITS COMMITTEE OF THE MOTION PICTURE INDUSTRY HEALTH PLAN; and CLAIMS REVIEW COMMITTEE OF THE BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br>                    Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF ERISA**<br><br>**CLASS ACTION** |

COMPLAINT

**INTRODUCTION**

1. Plaintiffs Greg Endries and Dee Nichols are both members of Local 600 of the International Cinematographers Guild, a participating union in the Motion Picture Industry Health Plan ("MPI Health Plan" or "Plan"). The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1000 *et. seq.*, and subject to ERISA's strict fiduciary standards with respect to the Plan's management and administration.

2. As an enticement to join the union, Local 600 touts the excellent benefits available to union members under the MPI Health Plan, which it describes as the "best medical coverage in the entertainment industry." According to Local 600's website, joining the union provides a means to receive "continuous healthcare, despite working for a variety of employers." Both men joined this union in large part to receive these advertised health benefits, but those benefits have now proved elusive at a time when needed the most during this unprecedented COVID-19 pandemic.

3. In order to receive benefits under the MPI Health Plan, participating union members such as Mr. Endries and Mr. Nichols must work a sufficient number of hours during a six-month period: either 600 hours for newly-qualifying participants, or 400 hours thereafter. As union members, however, each hour that they work for participating employers results in these employers making contributions to fund the Plan, regardless of whether Mr. Endries and Mr. Nichols have worked a sufficient number of hours to qualify for benefits during a relevant period.

4. Both Plaintiffs were on track to make their hours when COVID-19 shut down the motion picture industry in New York and Los Angeles, where Mr. Endries and Mr. Nichols live and work, respectively. The Board of Directors of the Plan, who are ERISA fiduciaries, recognized the problem caused to many participants by this shutdown and responded by extending 300 hours of credit, and later by

extending waiver of premiums for dependents as well as COBRA subsidies, to participants who were currently receiving benefits under the Plan and who needed to earn 400 hours by April or thereafter. But it left participants like Mr. Endries and Mr. Nichols out in the cold, and refused to extend the hours, premium waiver for dependents, or COBRA subsidies to them and others like them. These actions have forced Mr. Endries and Mr. Nichols and others like them to either pay for COBRA or other insurance coverage that they can ill afford given their loss of employment, or to go without health insurance during this dangerous health crisis. In failing to extend hours, dependent premium waivers and COBRA subsidies to the group of Plan participants similarly situated to Mr. Endries and Mr. Nichols, the Board has violated its ERISA duty of loyalty, which requires it to treat all Plan participants fairly and not to arbitrarily favor one group of participants over another.

## JURISDICTION

5. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to ERISA, ERISA Section 502(e) and (f), 29 U.S.C. § 1132(e) and (f).

## VENUE

6. Venue lies in the Central District of California pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the MPI Health Plan is administered in this District and Defendants Board of Directors of the Motion Picture Industry Health Plan ("Board of Directors" or "Board"), the Benefits Committee of the Motion Picture Industry Health Plan ("Benefits Committee"), and the Claims Review Committee of the Board of Directors of the Motion Picture Industry Health Plan ("Claims Review Committee") may be found in this District.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to General Order 19-03, Section I.B.1.a.(1)(c), this case should be assigned to the Western Division.

**THE PARTIES**

8. Plaintiff Greg Endries is, and has been at all relevant times, a participant as defined by ERISA Section 3(7), 29 U.S.C. § 1002(7), in the MPI Health Plan. Mr. Endries is a resident of New York, New York.

9. Plaintiff Dee Nichols is, and has been at all relevant times, a participant as defined by ERISA Section 3(7), 29 U.S.C. § 1002(7), in the MPI Health Plan. Mr. Nichols is a resident of Los Angeles, California.

10. The MPI Health Plan is an employee welfare benefit plan as defined by ERISA Section 3(1), 29 U.S.C. § 1002(1). The Plan is funded and administered through a trust established by collective bargaining agreements between numerous unions and employers in the motion picture production industry.

11. Defendant Board of Directors is the Plan Administrator of the MPI Health Plan within the meaning of ERISA Section 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i). The Board of Directors consists of sixteen individuals appointed by the participating employers, and sixteen individuals appointed by the participating unions. Collectively, the Board of Directors are responsible for the operation and administration of the Plan.

12. The Board of Directors is a named fiduciary of the MPI Health Plan because it is named the Plan Administrator in the governing Plan documents, and is a functional fiduciary of the Plan within the meaning of ERISA Section 3(21), 29 U.S.C. § 1002(21), in that it has and exercises discretionary authority or discretionary control respecting management of the Plan and its assets, and/or it has discretionary authority or discretionary responsibility in the administration of the Plan. In administering the MPI Health Plan, the Board of Directors' authority and responsibilities include the power to construe the provisions of the Plan, the responsibility to determine the nature, amount and duration of health benefits available to participants and beneficiaries of the Plan, and the authority to decide any questions related to eligibility for and the extent of benefits provided to

4
COMPLAINT

participants and beneficiaries. The Board of Directors' address is in Studio City, Los Angeles County, California.

13. As Plan Administrator, the Board of Directors delegates some Plan administration responsibilities to Defendant Benefits Committee and/or Defendant Claims Review Committee, including resolution of disputes regarding eligibility, type, amount, and duration of benefits under the Plan.

14. In carrying out these Plan administration duties, Defendants Benefits Committee and Claims Review Committee act as fiduciaries of the MPI Health Plan. Pursuant to the Plan, the Claims Review Committee consists of members of the Benefits Committee, as appointed by the Chairman of the Board of Directors.

## FACTS

**MPI Health Plan Provisions**

15. The MPI Health Plan provides welfare benefits, including medical, prescription drug, vision, dental and life insurance to participants who meet the Plan's eligibility requirements. The participating employers are those engaged in the production of motion pictures or in the business of furnishing materials or services for motion picture productions, and which have entered into a collective bargaining agreement with one or more participating unions. The Plan participants hold a wide range of jobs in movie and television production, such as camera operators, still photographers, technicians, grips, hair and make-up artists, art directors, film editors, costume designers, script supervisors, painters and mechanics.

16. Employers that participate in the MPI Health Plan contribute funds at specified rates to the Plan on behalf of all covered employees for all hours worked. These employees, along with their dependent spouses and children, constitute the Plan participants and beneficiaries.

17. To be eligible for benefits under the Plan, participants must meet the Plan's work hours requirements, which is based on six-month Qualifying Periods.

Defendants determine whether participants meet the hours requirements on a monthly basis, according to a set schedule.

18. If a participant has never been eligible for benefits under the Plan before, or has not been eligible for benefits in any of the five prior Eligibility Periods, he or she must work at least 600 hours in covered employment during one or two consecutive Qualifying Periods in order to become eligible for Plan benefits. A Qualifying Period spans a six-month period as set forth in the Plan's schedule. After satisfying this requirement, the participant's benefits, and the benefits of his or her dependent spouse and/or children, will start at the beginning of the six-month Eligibility Period that follows. For example, if a new Plan participant works at least 600 hours during the Plan's Qualifying Period of September 23, 2019 through March 21, 2020, he will be eligible for benefits during the Plan's Eligibility Period of June 1, 2020 through November 30, 2020.

19. Once a participant has met these initial eligibility requirements, he and his dependents will be eligible for benefits in each subsequent six-month Eligibility Period provided he works for at least 400 hours during the corresponding six-month Qualifying Period. For example, if a participant's benefit eligibility is set to expire on May 31, 2020, the Plan will reassess his eligibility for the subsequent Eligibility Period of June 1, 2020 through November 30, 2020, during the corresponding Qualifying Period of September 23, 2019 through March 21, 2020. Therefore, if this participant has worked at least 400 hours between September 23, 2019 through March 21, 2020, he and his dependents will remain eligible for benefits during the next Eligibility Period. If the participant does not qualify for that Eligibility Period because he has not worked at least 400 hours during the Qualifying Period, his eligibility will automatically be reviewed again one month later, for the next six-month Eligibility Period (meaning it is possible to requalify for benefits within just one month of becoming ineligible).

20. Notwithstanding the above eligibility criteria, historically the Plan has recognized certain "extensions," whereby a participant and his dependents who are otherwise going to become ineligible for benefits due to the participant having worked less than 400 hours will nevertheless remain eligible for benefits. For example, the Plan offers an eligibility extension of six months to an individual that is unable to work because of a short-term illness or injury.

21. The Plan also provides that, for each Qualifying Period following initial eligibility, hours earned in excess of 400 are credited to the participant's "bank" of hours. If hours earned in a subsequent Qualifying Period do not equal 400, then hours from the participant's bank are automatically withdrawn to satisfy the 400 hours requirement.

**COVID-19 Impact on Work and Defendants' Response**

22. In March 2020, the motion picture industry, like so many other industries, encountered a widescale shutdown due to the COVID-19 pandemic. In early March, nearly all television and movie productions were abruptly cancelled and put on hold indefinitely. As a result, many participants in the MPI Health Plan that were working toward their initial 600-hour Qualifying Period to become eligible for benefits, or that were working toward a subsequent 400-hour Qualifying Period to remain eligible for benefits, lost work and became unable to accrue a sufficient number of qualifying hours to secure Plan eligibility for an upcoming Eligibility Period.

23. Defendants, as fiduciaries of the MPI Health Plan, recognized this problem caused by the COVID-19 shutdown and responded in several ways, including a COVID-19 hours extension, waiver of premiums for dependents, and future COBRA premium subsidy. Defendants' COVID-related relief has constituted an important safety net during the unprecedented times of pandemic and industrywide shutdown, when access to healthcare is perhaps more important than

ever. However, Defendants extended this important COVID-related relief only to some, and not all, of the Plan participants affected by the COVID-19 shutdown.

24. First, Defendants voted to extend up to 300 hours for April and May to participants whose benefit eligibility was under review during those months. However, Defendants extended this 300-hour extension only to those they referred to as " Active Participants who are currently enrolled in MPIHP and whose benefit period ends on June 30, 2020 (this is for the qualifying period that ends in April 25, 2020)," thereby explicitly excluding participants on COBRA or on disability, and excluding participants working toward initial eligibility.

25. With respect to participants with 375 or more hours in the six-month period ending in March, Defendants provided a credit of just 25 hours to reach the 400-hour requirement for the Qualifying Period ending March 21, 2020. For participants who had at least 300 but less than 375 hours in the six-month Qualifying Period ending March 21, 2020, Defendants required those participants to prove that but for the loss of work commitments due to production shutdowns caused by the COVID-19 global pandemic, they would have worked sufficient hours to reach 400 hours by March 21, 2020. In doing so, Defendants applied a more onerous standard to participants whose Qualifying Period ended on March 21, 2020, even if they were on track to make the requisite 400 hours by late March. For example, to remain eligible for benefits, a participant with 350 hours had to prove that he would have met the 400-hour requirement by March 21 absent the shutdown; in contrast, no participant with a Qualifying Period ending just one month later had to make any kind of showing, even if that individual only had 100 hours at the time of the shutdown and was only scheduled to work minimal hours during the months of March or April.

26. Likewise, for individuals whose Qualifying Period ended on March 21, 2020, who were not on track to hit the requisite 400 hours by March 21, but who were on track to meet the requirement by April 25, 2020, these individuals were

wholly precluded from the hours extension.  For example, if an individual had 295 hours in early March, was unable to reach the 400 hour requirement by March 21 but had scheduled sufficient hours in March and April to meet the April 25, 2020 Qualifying Period deadline, this participant was nonetheless precluded from receiving any hours extension, either automatically or with an evidence showing to Defendants.

27. In addition, by limiting the extension of hours to participants already receiving benefits, Defendants precluded all participants who were on track to meet an initial 600-hour requirement in March, April, or later from access to any relief. For example, even if an individual had 575 hours as of early March, once the shutdown occurred, he received no hours extension.

28. Second, the Board announced that beginning with payments due June 30, 2020, participants responsible for paying health premiums for dependents would be granted a premium waiver for those dependents.  However, the same participants who were excluded from the COVID hours extension were also excluded from this premium waiver for dependents.

29. Third, on or around June 25, 2020, the Board announced that Defendants approved "granting COBRA coverage without the required premium payment starting September 1."  In addition, Defendants waived the usual dependent premium payments for participants with family members so that they could continue receiving benefits without cost during the shutdown.  Again, however, this relief excluded the same participants who were excluded from the other COVID-related relief.  Thus, for all participants who were excluded from the COVID hours extension and dependents' premium waiver safety nets, they were also excluded from the COBRA subsidy safety net.  Even worse, for those who were working toward their initial 600-hour requirement at the time of the shutdown, they are not eligible for any COBRA coverage because they were not receiving any benefits, so there is no COBRA coverage to be had.

30. The loss of both income and affordable health insurance coverage during this worldwide health crisis is devastating to the Plan participants and their family members who were arbitrarily excluded by Defendants despite the fact that they, like the other participants who were extended the 300 hours, premium waiver for dependents, and/or COBRA subsidies, lost their needed work hours due to the crisis.

**Plaintiffs' Employment and Plan Participation**

<u>Greg Endries</u>

31. Plaintiff Greg Endries, who works as a still photographer on television sets in and around the New York City area, has been a Plan participant since approximately January 2019, when he became a member of Local 600 of the International Cinematographers Guild, a participating union in the Plan. As such, each hour that he works for participating employers results in these employers making contributions to fund the Plan, regardless of whether he has worked a sufficient number of hours to qualify for benefits during a Qualifying Period.

32. Mr. Endries reached the Plan's initial 600-hours requirement in September 2019, qualifying him for benefits during the Eligibility Period of December 1, 2019 through May 31, 2020. In order to remain eligible for benefits for the subsequent Eligibility Period (June 1, 2020 through November 30, 2020), he needed 400 hours during the Qualifying Period of September 23, 2019 through March 21, 2020. If he did not hit that, he could go on COBRA for one month, and then carry over hours and work the additional hours needed to reach 400 hours during the next Qualifying Period, October 27, 2019 through April 25, 2020, to be eligible for benefits for the July 1, 2020 to December 31, 2020 Eligibility Period.

33. Mr. Endries' work was slow during the holiday season, between December 2019 and mid-January 2020. However, his work started to pick back up after that, and by early March, he had 283 hours. His plan was to attempt to reach the 400 hours requirement by March 21, 2020, but if he did not meet that deadline,

then to go on COBRA for one month, and reach the 400 hours requirement by April 25, 2020.

34. Mr. Endries' schedule was as busy as ever between mid-January and early March, he had multiple jobs lined up, and his schedule was filling up for March and April. However, all of his work was cancelled in early March 2020 due to all productions shutting down amidst the pandemic and shelter-in-place rules.

35. Had Mr. Endries been working in covered employment for longer, he would have had a bank of approximately 200 hours from which he could have pulled to reach the 400 mark by March 21, 2020. However, he had to use all of his 600 hours worked during the previous Qualifying Period to satisfy the Plan's initial hours requirement, and thus had no banked hours.

36. Pursuant to Defendants' interpretation and application of the eligibility rules, Mr. Endries was precluded from receiving an extension of hours to meet the 400-hours requirement as of March 21, 2020, or any time thereafter. He submitted documentation to Defendants seeking coverage given his circumstances, but Defendants rejected his request. In addition, because he was not provided the hours extension, he was also precluded from accessing the COBRA subsidy that Defendants provided to other participants affected by the pandemic and work shutdown.

37. As a result, in addition to having no income, Mr. Endries' health benefits under the Plan expired on May 31, 2020, and because he finds it difficult to afford COBRA coverage, he is without health insurance during these times of significant health crisis.

38. Furthermore, because work has remained unavailable for nearly five months at this point, based on Defendants' interpretation and application of the Plan eligibility rules, Mr. Endries will soon be ineligible for receiving benefits under the 400-hour rule and will be required to satisfy another 600-hour initial eligibility threshold. This was sufficiently difficult in 2019, and given the ongoing nature of

the pandemic and work slowdown, it is very unlikely that he will be able to satisfy that more onerous requirement any time during the foreseeable future.

39. Defendants' inequal application or interpretation of eligibility rules to different categories of Plan participants has resulted in many of Mr. Endries' peers receiving a 300-hours extension simply because their Eligibility Period was just one month later. Other participants are now entitled to COBRA coverage without needing to pay the COBRA premium for themselves or their eligible dependents. Although those Plan participants may also be experiencing financial difficulties right now due to lack of work, at least those individuals, and their covered dependents, have security with respect to their health insurance.

<u>Dee Nichols</u>

40. Plaintiff Dee Nichols, who works as a camera operator in and around Los Angeles, has been a Plan participant since approximately October 2015, when he became a member of Local 600 of the International Cinematographers Guild, a participating union in the Plan. As such, each hour that he works for participating employers results in these employers making contributions to fund the Plan, regardless of whether he has worked a sufficient number of hours to qualify for benefits during a Qualifying Period.

41. At the time of the industrywide shutdown in early March 2020, Mr. Nichols had worked 512 hours out of the 600 hours that he needed to satisfy the Plan's initial coverage requirement. He had scheduled enough work to meet the 600-hour requirement by March 21, 2020. However, in early March, his work was cancelled due to the pandemic and related shelter-in-place rules, and he became unable to meet the 600-hour requirement.

42. Pursuant to Defendants' interpretation and application of the eligibility rules, Mr. Nichols was precluded from receiving any hours extension, because individuals who were not receiving Plan benefits as of early March 2020 were categorically excluded from receiving this relief.

43. As Mr. Endries did, Mr. Nichols also submitted a request and documentation to Defendants seeking coverage given his circumstances, but Defendants rejected his request as well. In addition, because he was never provided benefits under the Plan, he was not only precluded from accessing COBRA subsidy that was provided to other participants, but he also is ineligible to receive benefits through COBRA at all, even if he were to pay the premiums, because COBRA eligibility is predicated on first being enrolled before a loss of eligibility.

44. As a result, in addition to having no income, Mr. Nichols has no health benefits under the Plan, and has had to purchase private insurance with much worse coverage. In addition, because work has remained unavailable for nearly five months since the shutdown, based on Defendants' interpretation and application of the Plan eligibility rules, Mr. Nichols has lost much of the 512 hours that he had saved up. Given the ongoing nature of the pandemic and work slowdown, it is very unlikely that he will be able to satisfy the 600-hour requirement any time during the foreseeable future.

45. Defendants' inequal application or interpretation of eligibility rules to different categories of Plan participants has resulted in many of Mr. Nichols' peers receiving a 300-hours extension simply because they were working toward the 400-hour requirement to remain eligible for benefits, instead of the 600-hour requirement to achieve initial eligibility. Although those Plan participants may also be experiencing financial difficulties right now due to lack of work, at least they, and their covered dependents, have security with respect to their health insurance.

## CLASS ALLEGATIONS

46. Mr. Endries and Mr. Nichols bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (2).

47. The Class is defined as all MPI Health Plan participants who were precluded from receiving a 300-hour extension offered to participants who were receiving benefits and whose Qualifying Period deadlines were in April or May, as well as the premium waiver for dependents offered to these same Plan participants, and the COBRA subsidies offered to those whose coverage would end in September.

48. Plaintiffs reserve the right to modify the definition of the proposed class based on information that they or their counsel learn through discovery.

49. The proposed class meets all the requirements of Federal Rule of Civil Procedure 23, as follows.

50. Upon information and belief, the Class is so numerous that joinder of all persons in the Class is impracticable. The MPI Health Plan's publicly available Form 5500 (Annual Return/Report of Employee Benefit Plan), for the Plan year ending December 31, 2018, states that there were more than 63,000 Plan participants during that year. Plaintiffs are informed and believe that it is likely that hundreds of Plan participants have been excluded from Defendants' COVID-19-related relief. While the precise number of proposed Class members has not been determined at this time, Plaintiffs are informed and believe that the substantial number of MPI Health Plan participants and beneficiaries who have been similarly affected precludes joinder of all affected participants and beneficiaries. Numerosity of the Class will be ascertained and confirmed by discovery. The number and identity of the members of the Class are readily determinable from the Defendants' records.

51. There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

    a. Whether Defendants acted in a fiduciary capacity in excluding Class members from COVID-19 relief, including the 300-hour

eligibility extension, premium waiver for dependents and COBRA subsidies;

    b.    Whether Defendants breached their fiduciary duties by excluding Class members from being eligible for the 300-hour extension, premium waiver for dependents and/or COBRA subsidies; and

    c.    Whether Plaintiffs and the Class are entitled to equitable relief from Defendants' violations of ERISA Section 404(a).

52.    The claims of the named Class representatives are typical of the claims of the proposed Class. Plaintiffs and all members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of applicable Federal law. Plaintiffs' claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

53.    The named representatives will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of Mr. Endries and Mr. Nichols and the other members of the proposed Class.

54.    This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual class members could produce varying adjudications as to, *inter alia*, whether Defendants acted in a fiduciary capacity in providing COVID-related relief to some, but not all, Plan participants; whether Defendants breached their fiduciary duty of loyalty by excluding Class members from the COVID-related

1  relief; and whether injunctive and other equitable relief is available for Defendants'
2  ERISA violations.

3  55. This action is maintainable as a class action under Rule 23(b)(2)
4  because Defendants have acted and/or refused to act on grounds generally
5  applicable to the Class, thereby making appropriate monetary, injunctive and other
6  equitable relief in favor of the Class. For example, Defendants' refusal to provide
7  the 300-hour extension and/or COBRA subsidy to all Plan participants working
8  toward the April 25, 2020 deadline, and Defendants' refusal to provide the 300-hour
9  extension to Plan participants working toward their initial 600-hour eligibility
10 requirement, was systemic in nature, affecting all similarly situated MPI Health Plan
11 participants in the same way.

## FIRST CLAIM FOR RELIEF
### Claim for Injunctive and Appropriate Equitable Relief to Remedy Violation of ERISA Section 404(a), 29 U.S.C. § 1104(a), Against All Defendants

56. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

57. ERISA Section 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries. These duties include the duty of impartiality, such that fiduciaries must act for the benefit of all participants, even-handedly among them, and may not favor the interests of one group of participants over another.

58. Defendants breached their fiduciary duties to Plaintiffs and the Class members by acts and omissions, including arbitrarily favoring one group of participants over others, and excluding Plaintiffs and the Class from the COVID-related safety nets in the form of 300-hour extensions, premium waiver for dependents, and COBRA subsidy that Defendants extended to other participants.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

59. Plaintiffs and the Class members have been harmed by Defendants' breaches in that Defendants' administration of the Plan has resulted in Plaintiffs and the Class members being ineligible for Plan benefits, premium waiver for dependents, and subsidy of COBRA premiums extended to other participants.

60. Plaintiffs and the Class members seek injunctive and other appropriate equitable relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), to remedy these fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class members pray that the court grant the following relief:

1. Certify the proposed Class, appoint Plaintiffs to represent the proposed Class, and designate Plaintiffs' counsel as Class counsel;

2. Declare that Defendants have breached their fiduciary duties to Plaintiffs and the Class members;

3. Surcharge Defendants in the amount necessary to place Plaintiffs and the Class members in the position they would have occupied but for Defendants' breaches;

4. Require Defendants to provide the 300-hour extension plus retroactive health benefits, with waiver of premium for dependents, for those that would have qualified for eligibility had they received the extension, (or insurance reimbursement for those that purchased insurance because of MPI's breach), as well as COBRA premium subsidies to Plaintiffs and Class members on the same basis as that provided to the other participants;

5. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g); and

6. Provide such other equitable relief as the Court deems appropriate.

Dated: July 16, 2020

RENAKER HASSELMAN SCOTT LLP
KANTOR & KANTOR, LLP

By: */s/ Elizabeth Hopkins*
Elizabeth Hopkins

Attorneys for Plaintiffs and the Proposed Class